| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY** | |
| Caption in Compliance with D.N.J. LBR 9004-2(c) | |
| **GENOVA BURNS LLC**<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ  07920<br>Phone: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Counsel for Elite Home Products, Inc.,*<br>*Debtor-in-Possession*<br>**DANIEL M. STOLZ, ESQ.**<br>**SCOTT S. REVER, ESQ.**<br>**GREGORY S. KINOIAN, ESQ.** | Order Filed on March 31, 2022<br>by Clerk,<br>U.S. Bankruptcy Court<br>District of New Jersey |
| In Re:<br><br>**ELITE HOME PRODUCTS, INC.,**<br><br>                                                     Debtor. | Case No.:  22-12353 SLM<br><br>Judge: Honorable Stacey L. Meisel<br><br>Chapter: 11 |

**INTERIM ORDER AUTHORIZING THE IMMEDIATE INTERIM USE OF CASH COLLATERAL, GRANTING ADEQUATE PROTECTION, AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION SECURED CREDIT, SCHEDULING A FINAL HEARING AND GRANTING OTHER RELATED RELIEF**

The relief set forth on the following pages, numbered 2 through 17, is hereby **ORDERED**.

**DATED: March 31, 2022**

*/s/ Stacey L. Meisel*
Honorable Stacey L. Meisel
United States Bankruptcy Judge

(Page 2)

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

This matter is before the Court on the motion (the "Motion") of Elite Home Products, Inc., (the "Debtor"), pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, and 364, Rules 2002, 4001, 6003 and 9014 of the Federal Rule of Bankruptcy Procedure, and D.N.J. LBR 4001-3: (a) authorizing the Debtor to use cash collateral of M&T Bank (also known as Manufacturer & Trader Trust Company) (the "Bank") on an immediate interim basis pending a final hearing on the Motion; (b) granting adequate protection to the Bank with respect to such use of cash collateral and any diminution in value of the Bank's interests in the pre-petition collateral; (c) authorizing the Debtor to obtain secured financing from the Bank through the continuation of Debtor's pre-petition revolving credit facility; (d) setting the date and time for a final hearing on the Motion; and (e) granting certain other related relief. The Debtor has submitted the Certification of Scott R. Perretz, president and majority shareholder of the Debtor, in support of the Chapter 11 proceedings and the first-day motions filed substantially contemporaneously with the Debtor's Chapter 11 petition, including the underlying Motion (the "Perretz Certification"). Notice of the Motion, together with notice of the preliminary hearing thereon, has been given and served by the Debtor to the (1) The United States Trustee, (2) the Debtor's prepetition and proposed post-petition secured creditors, (3) any committee appointed under Section 1102 if one has been appointed, and if not, to the twenty (20) largest unsecured creditors, and those parties requesting notice. The Court considered the Motion and the Perretz Certification, and after due

16421371v1 (25043.002)

(Page 3)

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

deliberation and good and sufficient cause appearing for the entry of the within Order, it is hereby found:

A.   <u>Notice and Hearing</u>.  Notice of the Motion and order shortening time pursuant to D.N.J. LBR 9013-1(e) and Federal Rule of Bankruptcy Procedure 9006(c) for the preliminary hearing on the Debtor's use of cash collateral and obtaining post-petition credit has been served in accordance with Section 102(1) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 4001(b) and 4001(c) which notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules in respect to the relief requested.

B.   <u>Chapter 11 Filed</u>.  Debtor filed its petition under Chapter 11 of the Bankruptcy Code on March 24, 2022 (the "Petition Date") and is presently operating as a debtor-in-possession in accordance with section 1107 and 1108 of the Bankruptcy Code.

C.   <u>Pre-Petition Debt</u>. At the time of the Chapter 11 filing, the Debtor was indebted to the Bank: (i) in the amount of $2,617,022.00 principal, as of March 23, 2022, plus accrued interest, fees and costs, on account of Debtor's revolving credit facility (the "Revolving Credit"), as currently governed by the Loan Documents between the Bank and the Debtor.  Copies of the Loan Documents are annexed to the Perretz Certification as Exhibit A. The amounts due and to become due under the Revolving Credit is referred to as the "Obligations".

(Page 4)

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

D.  Pre-Petition Collateral.  Pursuant to the General Security Agreement dated as of September 28, 2012 executed by the Debtor in favor of the Bank, to secure the payment and performance of the Obligations, the prepetition Debtor granted the Bank security interests in and liens on the existing and future assets of the prepetition Debtor, including but not limited to its accounts, inventory, equipment, general intangibles, instruments, documents and bank accounts (together, with all other assets in which pre-petition Debtor has granted the Bank a lien or a security interest, all as more particularly set forth in the General Security Agreement and other Loan Documents, the "Bank Collateral") which security interests were perfected by, inter alia, the filing of a UCC financing statement with the New Jersey Department of the Treasury on October 1, 2012, as document 2626249-9, as subsequently continued through the present date. Copies of the UCC financing statements and continuation statements filed in connection with the Bank Collateral are annexed to the Perretz Certification as Exhibit B.

In addition, on the Petition Date the Bank held cash collateral of the Debtor consisting of account balances in operating or other bank accounts of the prepetition Debtor maintained at the Bank.

E.  Cash Collateral.  "Cash Collateral" as defined by Section 363(a) of the Bankruptcy Code includes, but is not limited to, cash of the Debtor on deposit with the Bank on the Petition Date, all accounts receivable of the Debtor as of the Petition Date, and post-petition

**(Page 5)**

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

proceeds, products, offspring, rents, or profits of the Bank Collateral, and "proceeds" as described in UCC Section 9-306.

    F.    <u>Necessity and Best Interest</u>.  The Debtor does not have sufficient unencumbered cash or other assets with which to continue to operate its business in Chapter 11.  The Debtor requires immediate authority to use cash collateral as defined herein, and to continue its pre-petition financing arrangements with the Bank, as described herein, in order to continue its business operations without interruption toward the objective of a sale of its operating business assets to a buyer that will continue to operate the business and maintain employment of material portions of the Debtor's workforce or through an orderly liquidation.  Debtor's use of cash collateral and continuation of its pre-petition financing from the Bank to the extent and on the terms and conditions set forth herein, are necessary to avoid immediate and irreparable harm to the estate pending a further hearing.

    G.    <u>Purposes</u>. The Debtor is authorized to use cash collateral of the Bank, and to access credit from the Bank, solely to the extent otherwise authorized and allowed under the terms of the Loan Documents, to meet the ordinary cash needs of the Debtor's business operations, and for such other purposes as may be approved in writing by the Bank, in accordance with Debtor's the proposed operating budget attached as **Exhibit "A"** hereto (the "Cash Collateral Budget"), and only the term of this Order (the "Budget Period").

**(Page** 6**)**

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

H.     <u>Debtor's Stipulations.</u>  Without prejudice to the rights of any other party (but subject to the limitations thereon as may be expressly set forth below), subject to entry of the Final Order, the Debtor admits, stipulates, and agrees that:

i.     as of the Petition Date, the Debtor was indebted and liable to the Bank, without defense, counterclaim or offset of any kind, for the Obligations, made by the Bank in the principal amount of $2,617,022.00 principal, as of March 23, 2022, together with accrued interest, fees and expenses (including, without limitation, the reasonable attorneys' fees of the Bank; the Obligations are unconditionally guaranteed by Scott Perretz pursuant to a continuing guaranty, dated as of September 28, 2012;

ii.     the Obligations constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with their terms (except as subject to the stay of enforcement arising under section 362 of the Bankruptcy Code);

iii.     (a) no portion of the Obligations and no amounts paid at any time to the Bank in respect of the Obligations, and the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery or subordination or other challenge pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (b) the Debtor does not have any claims, counterclaims, causes of action, defenses or setoff rights related to the Obligations or the Loan Documents, whether arising on or prior to the date hereof, under the

**(Page** 7**)**

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

Bankruptcy Code or applicable nonbankruptcy law against the Bank and its respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors; and

      iv.      the liens and security interests granted by the Debtor to the Bank to secure the Obligations, are valid, binding, perfected, enforceable, first priority liens and security interests on the Bank Collateral, and are not subject to objection, defense, contest, avoidance, recharacterization, reclassification, reduction, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law by any person or entity; <u>provided</u> that the liens and security interests granted in the prepetition collateral shall be subject and subordinate to (a) the Carve Outs (as defined herein) and (b) any valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code).

The Court having reviewed the Debtor's Motion for the use of cash collateral under Section 363(c)(3) of the Bankruptcy Code, and for post-petition financing under Section 364 of the Bankruptcy Code, and the Perretz Certification, and for good cause shown, it is hereby

ORDERED as follows:

1.    <u>Use of Cash Collateral and Post-Petition Financing – Line of Credit Facility</u>.  The Debtor is authorized to use cash collateral and to continue to use the revolving credit facility established under the Loan Documents between Debtor and the Bank, both being subject to the terms and conditions of the Loan Documents, which shall be fully applicable post-petition,

(Page 8)

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

within and for the purposes specified in the Cash Collateral Budget, which shall not be modified without the Bank's prior consent, for the Budget Period, with the Bank agreeing to allow a variance of up to fifteen percent (15%) from any disbursement line item in the Cash Collateral Budget during the Budget Period. All prepetition charges and fees arising under the Loan Documents, and all payments becoming due under the Loan Documents, whether for pre-petition or post-petition advances, are authorized and required to be paid by the Debtor. Subject to the Carve-Outs (as defined and described herein), the Bank has and shall continue to have a valid and perfected, non-avoidable first-priority lien and security interest in the Bank Collateral. Except to the extent of the Carve-Outs, such lien and security interest shall not be primed by any lien or security interest granted to any post-petition lender or other person. To satisfy the requirement that the Bank continue to have a valid and perfected, non-avoidable first-priority (subject to the Carve-Outs) lien in the Bank Collateral and any proceeds thereof, Debtor grants the Bank a priming (subject to the Carve-Outs) lien and security interest pursuant to Bankruptcy Code section 364(d)(1) with respect to the Bank Collateral, which priming lien shall (i) be limited to amounts advanced by the Bank to the Debtor post-petition while this Interim Cash Collateral Order is in effect prior to entry of the Final Cash Collateral Order, and (ii) not extend to avoidance actions under Chapter 5 of the Bankruptcy Code and/or the proceeds thereof. The Bank may rely on the representations of Debtor with respect to its use of the revolving credit

**(Page** 9**)**

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

available under the Loan Documents, and the Bank shall not have any liability to any party for relying on such representations by Debtor.

  2. <u>Adequate Protection and Rights</u>.  As adequate protection for use of cash collateral, and in connection with the post-petition financing hereby authorized, the Bank is hereby granted (subject to the Carve-Outs) the following:

    a. <u>Payments and Performance Due Under the Loan Documents</u>. The right to collect and receive, when due, including the right to make direct application of funds from deposit accounts of Debtor maintained at the Bank, all interest payments, all over-advance reduction payments, and all other payments that are due or may become due under the Loan Documents, whether pre-petition or post-petition. The Debtor is hereby authorized and directed to make all such payments due or to become under the Loan Documents. The Debtor shall continue to perform all of the Debtor's obligations under the Loan Documents, including but not limited to the delivery of all reporting and documentation to the Bank as required under the Loan Documents.

    b. <u>Replacement Lien and Post-petition Lien</u>.  (i) A replacement perfected security interest in all post-petition assets of the Debtor, including post-petition inventory, deposit accounts and accounts receivable, under Section 361(2) of the Bankruptcy Code to the extent the Bank's cash collateral is used by the Debtor, to the extent and with the same priority in the Debtor's post-petition collateral, and proceeds thereof, that the Bank held in the Bank

**(Page** 10**)**

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

Collateral prepetition; and (ii) a post-petition lien and security interest on all post-petition property and assets of the Debtor within the definition of the Bank Collateral, to secure the Obligations, which lien and security interest shall be a first priority lien and security interest, which first priority lien and security interest shall (i) be limited to amounts advanced by the Bank to the Debtor post-petition while this Interim Cash Collateral Order is in effect prior to entry of the Final Cash Collateral Order, and (ii) not extend to avoidance actions under Chapter 5 of the Bankruptcy Code and/or the proceeds thereof.

   c.  Statutory Rights Under Section 507(b).  To the extent the adequate protection provided in this Order proves insufficient to protect the Bank's interest in and to the cash collateral, the Bank shall have a superpriority administrative expense claim, pursuant to Section 507(b) of the Bankruptcy Code, senior to any and all claims against the Debtor under Section 507(a) of the Bankruptcy Code, whether in this proceeding or in any superseding proceeding; provided, however, such superpriority administrative expense claim shall not extend to avoidance actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof.

   d.  Deemed Perfected.  The liens and security interests granted herein are automatically deemed perfected upon entry of this Order without the necessity of the Bank taking possession, filing financing statements, mortgages or other documents.  Although not required, upon request by the Bank, Debtor shall execute and deliver to the Bank any and all UCC Financing Statements, UCC Continuation Statements, Certificates of Title or other

**(Page** 11**)**

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

instruments or documents considered by the Bank to be necessary in order to perfect the security interests and liens in the Debtor's post-petition property and proceeds granted by this Order. The Bank is authorized to receive, file and record the foregoing, which actions shall not be deemed a violation of the automatic stay.

   e. <u>Default Hearing</u>.  In the event Debtor defaults under or violates this Order, including but not limited to failing to make required payments, or failing to submit required report or documents, or if the reporting required of the Debtor reveals a variance of more than fifteen percent (15%) from any disbursement line item in the Cash Collateral Budget, the Bank may terminate or suspend all post-petition financing and/or advances available under the Loan Documents, and may request a hearing, on short notice, on an application to terminate or condition the Debtor's use of cash collateral.

   f. <u>Bank's Rights of Inspection and Audit</u>.  In addition to any rights set forth in the Loan Documents, upon reasonable notice by the Bank, Debtor shall permit the Bank and any of its agents reasonable and free access to the Debtor's records and place of business during normal business hours to verify the existence, condition, and location of collateral in which said creditor holds a security interest and to audit Debtor's expenses, receipts and disbursements.

   g. <u>Interlocutory Order and No Modification of Bank's Adequate Protection</u>. This Interim Order is an interlocutory Order.  Nothing contained herein shall be deemed or construed to: (a) limit the Bank the relief granted herein; (b) bar the Bank from seeking other and

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

further relief (including without limitation relief seeking adequate protection or relief from the automatic stay) for cause shown on appropriate notice to the Debtor and other parties-in-interest entitled to notice of same; (c) require the Bank to make further or additional loans or advances to the Debtor except as the same may be within the terms of the Loan Documents, conditioned upon full adherence by the Debtor and any other parties to the terms of the Loan Documents, and this Order; or (d) impair the Bank's right under 11 U.S.C. 361, 363 and other applicable Sections of the Bankruptcy Code, to receive payment, directly from the settlement agent, of amounts due to the Bank under the Obligations on any sale of the Bank Collateral.

3. <u>Carve-Outs</u>. The Bank has agreed to carve-out from its pre-petition and post-petition security interests and liens on and in the Bank Collateral and from the adequate protection granted herein the following: (a) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. §156(b); (b) the allowed fees and expenses of lead counsel to the Debtor up to $100,000; and (c) the allowed fees and expenses of an official committee of creditors appointed pursuant to 11 U.S.C. § 1102(a) and its professionals employed in accordance with to 11 U.S.C. § 1103(a) and (b) up to the aggregate amount of $50,000 (collectively, the "Carve-Outs"). The Bank has agreed to subordinate its pre-petition and post-petition security interests and liens in the Bank Collateral and the adequate protection granted herein to the Carve-Outs. The Carve-Out limitations set forth in clauses (b) and (c) in the first sentence of this paragraph shall not

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

constitute caps on fees and expenses. To the extent such limitations are exceeded, allowed fees and expenses exceeding such limitations shall be granted and afforded administrative priority in accordance with and pursuant to 11 U.S.C. § 503(b) and § 507(a)(2). If this Chapter 11 case is converted to one under Chapter 7 in accordance with 11 U.S.C. § 1112, the Carve-Outs shall survive such conversion and continue to be of full force and effect.

4.      **Effect of Debtor's Stipulations on Third Parties.** As a result of the Debtor's review of the Loan Documents and the facts related thereto, subject to entry of the Final Order, the Debtor has admitted, stipulated, and agreed to various matters as set forth above and the stipulations and admissions contained in this Interim Order, shall be binding upon the Debtor and any successor thereto in all circumstances. Subject to entry of the Final Order, the stipulations and admissions contained in this Interim Order, shall be binding upon all other parties in interest, including any chapter 7 or chapter 11 trustee appointed or elected for the Debtor (a "Trustee"), unless any party in interest (including any Trustee), with requisite standing or a creditors' committee appointed pursuant to 11 U.S.C. § 1102(a) or successor-in-interest to the Debtor, has duly filed an adversary proceeding or contested matter, as required under the Bankruptcy Rules, challenging the validity, enforceability, priority or extent of the Obligations, the Loan Documents or the findings set forth in paragraph C or D above or the liens on the prepetition collateral securing the Obligations or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the

**(Page** 14**)**

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

"Claims and Defenses") against the Bank, its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Obligations or the prepetition collateral by no later than a date that is sixty (60) days after the appointment pursuant to 11 U.S.C. § 1102(a) of an official committee of creditors, or, if no such committee is appointed, entry of this order, unless extended with the Bank's consent (the "Challenge Deadline"); provided that, as to the Debtors and subject to entry of the Final Order, all such Claims and Defenses are irrevocably waived and relinquished as of the Petition Date to the extent provided herein.  If no such adversary proceeding or contested matter is timely filed prior to the Challenge Deadline, without further order of this Court: (x) the Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in this Chapter 11 case and any subsequent chapter 7 case; (y) the Bank's liens on the prepetition collateral shall be deemed to have been, as of the Petition Date, and shall be deemed to be, legal, valid, binding, perfected and of first priority, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (z) the Obligations, the Bank's liens on the prepetition collateral shall not be subject to any other or further challenge by any party in interest, and any such party in interest shall be enjoined from seeking to exercise the rights of the Debtor's estate, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the Challenge Deadline).  If any such adversary proceeding or

**(Page** 15**)**

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

contested matter is timely filed prior to the Challenge Deadline, the stipulations and admissions contained in this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any person, including any Trustee, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter.  Nothing in this Interim Order vests or confers on any person, including a Trustee, standing or authority to pursue any cause of action belonging to the Debtors or their estates.  In the event that there is a timely successful challenge to the Motion and/or this Interim Order, the Court shall retain jurisdiction to fashion an appropriate remedy.

5. <u>Modification</u>.  Application may be made for the modification of this Interim Order, for cause shown, by the Debtor, or the Bank, on due notice.  No such modification, however, shall deprive the Bank of its secured interest in the Debtor's property (pre-petition and post-petition), or affect the Bank's right to retain payments made to the Bank pursuant to the terms of this Interim Order.

### OBJECTION DEADLINE AND HEARING ON
### MOTION FOR ENTRY OF A FINAL ORDER

IT IS FURTHER ORDERED, AND NOTICE IS HEREBY GIVEN

6. That any creditor or other interested party having any objection to the Motion and/or the relief granted pursuant to this Interim Order shall file with the Clerk of this Court and serve upon counsel for the Debtor and counsel for the Bank a written objection in accordance

(Page 16)

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

with the requirements of the applicable sections of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of this Court on or before April 25, 2022.

7.  Any reply papers submitted by the Debtor and/or the Bank in response to said objections, if any, shall be filed and served no later than April 28, 2022.

8.  A Final Hearing on the Motion and all, if any, objections thereto shall be held on May 2, 2022 at 11:00 a.m., or as soon thereafter as the parties may be heard, before the Honorable Stacey L. Meisel, United States Bankruptcy Judge, of the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, New Jersey. The Final Hearing shall be conducted telephonically through Court Solutions. Parties are directed to the Court's website for information regarding telephonic appearances and Court Solutions registration requirements.

## NOTICING

IT IS FURTHER ORDERED

9.  The Debtor shall, and is hereby directed to, serve a copy of this Order and Notice by first1class mail within one (1) business day from the date hereof, on (1) the United States Trustee, (2) the District Director of the Internal Revenue Service, (3) the New Jersey Division of Taxation, (4) all prepetition and proposed post-petition secured creditors, (5) counsel to any committee appointed under Section 1102 of the Bankruptcy Code, if one has been appointed and if not, to Debtor's twenty (20) largest Rule 1007(d) unsecured creditors, and (6) all parties

16421371v1 (25043.002)

**(Page** 17**)**

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

requesting notice pursuant to Bankruptcy Rule 2002. Debtor shall promptly file with the Clerk a Certificate of Service regarding said mailing.

| | |
|---|---|
| Debtor: | Elite Home Products, Inc. |
| Chapter: | 11 |
| Case No.: | 22-12353 SLM |
| Caption of Order: | Interim Order Authorizing the Immediate Interim Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtor to Obtain Post-Petition Secured Credit, Scheduling a Final Hearing and Granting Other Related Relief |

# Exhibit A

16421380v1 (25043.002)

**Work Product – Attorney Client Privilege Prepared at the Direction of Counsel**
**DRAFT ONLY -13 Week Orderly Liquidation Cash Flow Budget Starting - TBD**

| | | Start Date | 3/21/2022 | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Week # | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 5 | Wk 6 | Wk 7 | Wk 8 | Wk 9 | Wk 10 | Wk 11 | Wk 12 | Wk 13 | 13 Week Total |
| | | Week Ending Sunday | 21-Mar-22 | 28-Mar-22 | 04-Apr-22 | 11-Apr-22 | 18-Apr-22 | 25-Apr-22 | 02-May-22 | 09-May-22 | 16-May-22 | 23-May-22 | 30-May-22 | 06-Jun-22 | 13-Jun-22 | 13-Jun-22 |
| | | Drivers | | | | | | | | | | | | | | |
| Row 1 | New Gross Revenue Excluding Sales Tax | A | 300,000 | 300,000 | 250,000 | 275,000 | 275,000 | 275,000 | 275,000 | - | - | - | - | - | - | 1,950,000 |
| Row 4 | Promo Discounts | 2.50% | (7,500) | (7,500) | (6,250) | (6,875) | (6,875) | (6,875) | (6,875) | - | - | - | - | - | - | (48,750) |
| Row 5 | Credit Card Fees Netted From Receipts | 0.00% | (200.00) | (200.00) | (200.00) | (200.00) | (200.00) | (200.00) | (200.00) | (200.00) | (200.00) | (200.00) | (200.00) | (200.00) | (200.00) | (2,600) |
| Row 8 | Total Projected Net Revenue | A | 292,300 | 292,300 | 243,550 | 267,925 | 267,925 | 267,925 | 267,925 | (200) | (200) | (200) | (200) | (200) | (200) | 1,898,650 |
| Row 9 | | | | | | | | | | | | | | | | |
| Row 10 | AR Collections | | 100,000 | 250,000 | 200,000 | 300,000 | 300,000 | 300,000 | 300,000 | 225,000 | 225,000 | 200,000 | - | - | - | 2,400,000 |
| Row 11 | Collections New AR | | - | - | - | - | - | - | - | - | - | 250,000 | 300,000 | 300,000 | 300,000 | 1,150,000 |
| Row 12 | Total Collections | | 100,000 | 250,000 | 200,000 | 300,000 | 300,000 | 300,000 | 300,000 | 225,000 | 225,000 | 450,000 | 300,000 | 300,000 | 300,000 | 3,550,000 |
| Row 13 | **Operating Disbursements** | | | | | | | | | | | | | | | |
| Row 14 | **COGS** | | | | | | | | | | | | | | | |
| Row 16 | Packaging et al. | 0.00% | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Row 17 | Total COGS | B | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Row 18 | **Payroll** | | | | | | | | | | | | | | | |
| Row 19 | Payroll Warehouse(Temp Agency) | 0.00% | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 82,500 |
| Row 20 | Payroll Taxes & Benefits | 0.00% | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Row 21 | Payroll Admin and Corporate | | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 248,000 |
| Row 22 | Payroll Admin Benefits | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Row 23 | Stay put Bonuses | | | | | | | | | | | | | | | - |
| Row 24 | **Payroll Corporate and Admin** | C | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 | 27,500 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 330,500 |
| Row 25 | | | | | | | | | | | | | | | | |
| Row 26 | Warehouse and Admin Rent | | | | | | | | | | | | | | | |
| Row 27 | Warehouse Rent | | - | 100,000 | - | - | - | - | 100,000 | - | - | - | 100,000 | - | 100,000 | 400,000 |
| Row 28 | Utilities PS&G | | - | - | - | 4,500 | - | - | 4,500 | - | - | - | 4,500 | - | - | 13,500 |
| Row 29 | Freight Out | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Row 30 | Supplies | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 7,400 |
| Row 31 | Subtenant Income | | - | - | - | (40,000) | - | - | - | (40,000) | - | - | - | - | - | (80,000) |
| Row 32 | 3PL Recovery / charges | | - | - | - | - | (10,000) | - | - | - | (10,000) | - | (10,000) | - | - | (30,000) |
| Row 33 | Auto | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Row 34 | Atradius | | - | - | - | - | - | - | 3,125 | - | - | - | 3,125 | - | 3,125 | 9,375 |
| Row 35 | Bank Charges | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,300 |
| Row 36 | Insurance Hartford | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Row 37 | Insurance GL and other | | - | - | - | - | - | 2,000 | 6,000 | - | - | 2,000 | 6,000 | - | - | 12,000 |
| Row 38 | Commerce HUB | | - | - | - | - | - | - | - | - | - | - | - | - | 4,000 | 4,000 |
| Row 39 | Licenses | | - | - | - | 100 | - | - | - | - | 100 | - | - | 100 | 100 | 300 |
| Row 40 | Microsoft | | - | - | - | 200 | - | - | - | - | 200 | - | - | 200 | 200 | 600 |
| Row 41 | Apprise | | - | - | - | 13,634 | - | - | - | - | 13,634 | - | - | - | - | 27,269 |
| Row 42 | Mindcore | | - | - | - | - | - | 5,500 | - | - | - | 5,500 | - | - | - | 11,000 |
| Row 43 | EDI 123 | | - | - | - | - | - | 1,500 | - | - | - | 1,500 | - | - | - | 3,000 |
| Row 44 | UPS | | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,600 |
| Row 45 | FEDEX | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 13,000 |
| Row 46 | Telephone | | - | - | - | 718 | - | - | - | - | 718 | - | - | - | 718 | 2,153 |
| Row 47 | Contingency | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 26,000 |
| Row 48 | **Total Warehouse and Admin Disbursements** | D | 4,300 | 104,300 | 4,300 | (16,548) | (5,700) | 12,600 | 117,225 | (36,400) | 8,252 | 12,600 | 107,225 | 3,600 | 107,743 | 423,496 |
| Row 49 | | | | | | | | | | | | | | | | |
| Row 50 | **Total Payroll, Warehouse and Admin Exp** | E | 31,800 | 131,800 | 31,800 | 10,952 | 21,800 | 40,100 | 144,725 | (13,400) | 31,252 | 35,600 | 130,225 | 26,600 | 130,743 | 753,996 |
| Row 51 | | | | | | | | | | | | | | | | |
| Row 52 | (Cash Burn) / Surplus | | 68,200 | 118,200 | 168,200 | 289,048 | 278,200 | 259,900 | 155,275 | 238,400 | 193,748 | 414,400 | 169,775 | 273,400 | 169,258 | 2,796,004 |
| Row 53 | Accum Surplus / (Shortfall) | | 68,200 | 186,400 | 354,600 | 643,648 | 921,848 | 1,181,748 | 1,337,023 | 1,575,423 | 1,769,172 | 2,183,572 | 2,353,347 | 2,626,747 | 2,796,004 | |
| Row 54 | | | | | | | | | | | | | | | | |
| Row 55 | **Debt Service and Restructuring Costs** | | | | | | | | | | | | | | | |
| Row 56 | Bank Interest | | - | - | - | - | - | - | - | - | 6,000 | - | - | 2,000 | 2,000 | 16,000 |
| Row 57 | Legal - Professional | | - | - | - | - | 8,000 | - | 75,000 | - | - | - | 50,000 | - | 50,000 | 175,000 |
| Row 58 | Financial Advisor | | - | - | - | - | - | - | 20,000 | - | - | - | 15,000 | - | 15,000 | 50,000 |
| Row 59 | IP / IB | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Row 60 | UCC | | - | - | - | - | - | - | 30,000 | - | - | - | 30,000 | - | 30,000 | 90,000 |
| Row 61 | Bank Attorney | | 25,000 | - | - | - | - | - | - | - | - | - | - | - | - | 25,000 |
| Row 62 | UST | | - | - | - | - | - | - | - | - | - | - | - | - | 20,000 | 20,000 |
| Row 63 | Contingency | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 13,000 |
| Row 64 | 1 Professional, Antecedent & Finance Charges | | 26,000 | 1,000 | 1,000 | 1,000 | 9,000 | 1,000 | 126,000 | 1,000 | 7,000 | 1,000 | 96,000 | 1,000 | 118,000 | 389,000 |

| | Drivers | Wk. 1<br>21-Mar-22 | Wk. 2<br>28-Mar-22 | Wk. 3<br>04-Apr-22 | Wk. 4<br>11-Apr-22 | Wk. 5<br>18-Apr-22 | Wk. 6<br>25-Apr-22 | Wk. 7<br>02-May-22 | Wk. 8<br>09-May-22 | Wk. 9<br>16-May-22 | Wk. 10<br>23-May-22 | Wk. 11<br>30-May-22 | Wk. 12<br>06-Jun-22 | Wk. 13<br>13-Jun-22 | 13 Week Total<br>13-Jun-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total All Disbursements: (COGS + P/R + G&e) | | 57,800 | 132,800 | 32,800 | 11,952 | 30,800 | 41,100 | 270,725 | (12,400) | 38,252 | 36,600 | 226,225 | 27,600 | 248,743 | 1,142,996 |
| Weekly Surplus / (Deficit) | | 42,200 | 117,200 | 167,200 | 288,048 | 269,200 | 258,900 | 29,275 | 237,400 | 186,748 | 413,400 | 73,775 | 272,400 | 51,258 | 2,407,004 |
| Accumulative | | 42,200 | 159,400 | 326,600 | 614,648 | 883,848 | 1,142,748 | 1,172,023 | 1,409,423 | 1,596,172 | 2,009,572 | 2,083,347 | 2,355,747 | 2,407,004 | |
| **Collateral Section** | | | | | | | | | | | | | | | |
| Opening Book Bank Balance | | - | 42,200 | 159,400 | 326,600 | 614,648 | 883,848 | 1,142,748 | 1,172,023 | 1,409,423 | 1,596,172 | 2,009,572 | 2,083,347 | 2,355,747 | |
| Shortfall / (Deficit) | | 42,200 | 117,200 | 167,200 | 288,048 | 269,200 | 258,900 | 29,275 | 237,400 | 186,748 | 413,400 | 73,775 | 272,400 | 51,258 | 2,407,004 |
| Cash Surplus / (Deficit) Includes Paying Old Critical Cash Need Weeks (If Any) | | 42,200 | 159,400 | 326,600 | 614,648 | 883,848 | 1,142,748 | 1,172,023 | 1,409,423 | 1,596,172 | 2,009,572 | 2,083,347 | 2,355,747 | 2,407,004 | 2,407,004 |
| Opening Inventory | | 1,950,000 | 1,650,000 | 1,350,000 | 1,100,000 | 825,000 | 550,000 | 275,000 | - | - | - | - | - | - | 1,950,000 |
| Sale of Inventory | 100.00% | (300,000) | (300,000) | (250,000) | (275,000) | (275,000) | (275,000) | (275,000) | - | - | - | - | - | - | (1,950,000) |
| New Inventory | | | | | | | | | | | | | | | |
| Balance | | 1,650,000 | 1,350,000 | 1,100,000 | 825,000 | 550,000 | 275,000 | - | - | - | - | - | - | - | - |
| Availability | 46.00% | 759,000 | 621,000 | 506,000 | 379,500 | 253,000 | 126,500 | - | - | - | - | - | - | - | |
| 50% with a reserve of 6.75 which nets to approximately 46% | | | | | | | | | | | | | | | |
| Opening AR | | 3,061,000 | 3,261,000 | 3,311,000 | 3,361,000 | 3,336,000 | 3,311,000 | 3,286,000 | 3,261,000 | 3,036,000 | 2,811,000 | 2,361,000 | 2,061,000 | 1,761,000 | 3,061,000 |
| Dilution Reserve | | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) | (200,000) |
| Eligible AR | | 2,861,000 | 3,061,000 | 3,111,000 | 3,161,000 | 3,136,000 | 3,111,000 | 3,086,000 | 3,061,000 | 2,836,000 | 2,611,000 | 2,161,000 | 1,861,000 | 1,561,000 | 2,861,000 |
| Collection Old AR | 0.00% | (100,000) | (250,000) | (200,000) | (300,000) | (300,000) | (300,000) | (300,000) | (225,000) | (225,000) | (200,000) | (300,000) | (300,000) | (300,000) | (2,400,000) |
| Collections New AR | | - | - | - | - | - | - | - | - | - | (250,000) | (300,000) | (300,000) | (300,000) | (1,150,000) |
| New Sales | | 300,000 | 300,000 | 250,000 | 275,000 | 275,000 | 275,000 | 275,000 | - | - | - | - | - | - | 1,950,000 |
| | | 3,061,000 | 3,111,000 | 3,161,000 | 3,136,000 | 3,111,000 | 3,086,000 | 3,061,000 | 2,836,000 | 2,611,000 | 2,161,000 | 1,861,000 | 1,561,000 | 1,261,000 | 1,261,000 |
| AR Advance Rate | 75.00% | 2,295,750 | 2,333,250 | 2,370,750 | 2,352,000 | 2,333,250 | 2,314,500 | 2,295,750 | 2,127,000 | 1,958,250 | 1,620,750 | 1,395,750 | 1,170,750 | 945,750 | 945,750 |
| Total Availability (Inventory and AR) before loan balance | | 3,054,750 | 2,954,250 | 2,876,750 | 2,731,500 | 2,586,250 | 2,441,000 | 2,295,750 | 2,127,000 | 1,958,250 | 1,620,750 | 1,395,750 | 1,170,750 | 945,750 | 945,750 |
| Open Bank Loan | | 2,762,000 | 2,719,800 | 2,602,600 | 2,435,400 | 2,147,352 | 1,878,152 | 1,619,252 | 1,589,977 | 1,352,577 | 1,165,829 | 752,429 | 678,654 | 406,254 | 2,762,000 |
| Paydown | | (100,000) | (250,000) | (200,000) | (300,000) | (300,000) | (300,000) | (300,000) | (225,000) | (225,000) | (450,000) | (300,000) | (300,000) | (300,000) | (3,550,000) |
| Advance | | 57,800 | 132,800 | 32,800 | 11,952 | 30,800 | 41,100 | 270,725 | (12,400) | 38,252 | 36,600 | 226,225 | 27,600 | 248,743 | 1,142,996 |
| | | 2,719,800 | 2,602,600 | 2,435,400 | 2,147,352 | 1,878,152 | 1,619,252 | 1,589,977 | 1,352,577 | 1,165,829 | 752,429 | 678,654 | 406,254 | 354,996 | 354,996 |
| Over / Under Excluding Cash in Bank | | 334,950 | 351,650 | 441,350 | 584,148 | 708,098 | 821,748 | 705,773 | 774,423 | 792,422 | 868,322 | 717,097 | 764,497 | 590,754 | 590,754 |
| Total Collateral | | | | | | | | | | | | | | | Remaining Asset |

| | Wk 1 | |
|---|---|---|
| Inventory | 1,950,000 | 1,261,000 |
| AR | 3,061,000 | 1,261,000 |
| Cash | - | - |
| | 5,011,000 | 2,762,000 |
| Loan | 2,762,000 | (3,550,000) |
| Surplus / Deficit | 2,249,000 | 1,142,996 |
| Reliance on Assets | 55% | 28.15% |

This is a draft template to be used by client - At this stage, this is not a Getzler Henrich Work Product but merely a guide to put into standard format

Analysis contained herein is based on data made available from Elite Home Products, (EHP) and its representatives, and no independent verification of such data was made by Getzler Henrich & Associates LLC (Getzler Henrich). Getzler Henrich and its affiliates make no representation and give no assurances as to the accuracy of the information contained herein. Accordingly, Getzler Henrich shall have no liability for any representations (express or implied) contained in, or for any omissions from, this report or any other written or oral communications transmitted to its Lenders, Shareholders and other third parties in the course of their evaluation of EHA. This document/report does not purport to contain all the information that a Lender or investor may desire, and lenders and investors should conduct their own investigation of the company. Getzler Henrich is not an accounting firm, did not perform an audit and provides no assurances to the accuracy of the information herein.